UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Action No.1:05-cr-10031-RGS

UNITED STATES OF AMERICA,

v.

MARIANNE SENATORE,
      Defendant.

DEFENDANT'S MOTION WITH INCORPORATED MEMORANDUM
OF LAW FOR MITIGATION & DOWNWARD DEPARTURE

Preliminary

Ms. Senatore is a fifty-year old unmarried woman with a constellation of a dozen serious chronic illnesses or conditions and history of personal isolation. She asks this Court for mitigation of her Guidelines sentence in accordance with *United States v. Booker*. She requests imposition of a sentence that allows her credit all time served in pre-trial detention toward her mandatory consecutive two-year sentence for aggravated identity theft, 18 USC §1028A. Concomitantly, Ms. Senatore asks the Court to depart downward six levels to impose a one-month sentence on counts one through 11 followed by the mandatory 24 month term on count 12 (aggravated ID theft).

Ms. Senatore moves on the factual basis of the November 16, 2005 PSR, subject to the appended objections, the Fifth and Sixth Amendments, and the law cited herein.

1

## FACTS

Ms. Senatore suffers from neurofibromatosis, uterine fibroids, cellulitis, asthma, hypertension, obesity, cataracts, hypothyroidism, anemia, torn knee ligaments, possible sleep apnea, recurrent non-malignant tumors. PSR ¶¶ 74 - 82, addendum, pp. 30 - 32 for defendant's summary of her condition. She stands about five feet tall and weighs 250 pounds.

Ms. Senatore's condition and her personal life bear an unfortunate relation. All her life, Ms. Senatore has experienced the rejection of her peers and siblings. Her brother, David Senatore, tells probation that defendant "was taunted by her peers constantly when she was a child and never had any real friends". PSR ¶ 67. Her poor physical health appears to have been connected with the unfortunate lack of friendships. Her mother tells Probation that Ms. Senatore "had a 'difficult time' as a child in that she was frequently ill, suffered from febrile seizures, and was clumsy which led her to being taunted by other children". PSR ¶ 65.

Ms. Senatore's upbringing does not appear to have been supportive, in spite of her mother's assertion that she treated Ms. Senatore "like a princess".[1] Contrary to the description the mother offers of home life, the parents fought regularly and later, in fact separated. David Senatore says that the defendant's

---

[1] Indeed, counsel notes his own contact with defendant's mother has been inconsistent. For instance, the mother reports now that Ms. Senatore cannot live with her. PSR ¶65. For most of the time of this action, defendant's mother has proposed that her daughter return to her home.

2

parents should have gotten her treatment early on and that this was ignored. PSR ¶ 67(a).  "Mr. Senatore reports that the defendant's parents fought a great deal and were in denial about the defendant's problems".  PSR ¶ 67(a).

Ms. Senatore's statements about childhood abuse (PSR ¶ 60) are entitled to more credit against this background of inconsistent family reporting.  No family wants to admit that it has been unkind to its children, but the implications are clear for this case; Ms. Senatore suffered early from physical infirmities and was cast socially as a misfit both inside and outside her family.  Her parents showed little interest in getting outside help for their daughter and chose to ignore her problems and focus on their own conflicts.  PSR 67(a).

## ARGUMENT

This defendant's condition and unfortunate life history will make her incarceration particularly difficult.  The two-year mandatory sentence of 18 USC §1028A is sufficient punishment for this fifty year-old woman in extreme ill health.

> Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms....[and they] should be revised downward.

August 9, 2003 Speech of Justice Anthony Kennedy at the ABA Annual Meeting (available at http://www.abanews.org/kencomm/amkspeech03.html) cited *US v. Ranum*, 353 F.Supp. 2d 984, 985, n.1 (E.D.Wis. 2005)  *U.S. v. Khan*, 325 F.Supp. 218, 227 (E.D.N.Y. 2004) (same);  *U.S. v. Antonakopoulos*  399 F.3d 68, 81 (1 Cir.

2005) ("History shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently.")

In *Booker*, the Supreme Court held that the sentencing guidelines are advisory only, not mandatory. *U.S. v. Booker,* 125 S.Ct. 738 (2005). A sentencing court is obliged to consider the factors set forth in 18 U.S.C. § 3555 (a) when passing the appropriate sentence. *See Booker*, 125 S.Ct. at 790 (sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determinations). Where statutory factors now include the defendant's individual characteristics, there is some authority for the proposition that a sentencing court must pass a sentence that considers the defendant's medical needs. See, *US v. Carmona-Rodriguez* 2005 WL 840464, *4 (S.D.N.Y.,2005) (court sentencing below applicable guidelines in part because needed medical care is a factor that must be considered under *Booker*); *US v. Nellum,* 2005 WL 300073, at *4 (stating that § 3553(a)(2) and *Booker* " 'require judges to impose sentences that ... effectively provide the defendant with needed medical care." ')

Ms. Senatore's physical condition is significant enough a factor to warrant mitigation. Physical condition and illnesses are grounds for both statutory mitigation and for a departure. Defendant refers to the PSR and the defendant's medical records submitted under seal. PSR ¶¶ 74 - 82. Her illnesses include

4

neurofibromatosis, uterine fibroids, cellulitis, asthma, hypertension, obesity, cataracts, hypothyroidism, anemia, torn knee ligament, possible sleep apnea, recurrent non-malignant tumors. Even under the regime of the *Feeney Amendment,* the Court may have considered her condition present "to extraordinary degree" warranting a Guidelines departure.

> The guidelines restrictions on (or prohibition of) considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant....Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.

*U.S. v. Jaber*, 362 F.Supp.2d 365 (D. Mass. 2005) ("*Booker* plainly allows courts to look carefully at those factors and to determine to what degree they are relevant to individual cases")' *see also* 18 U.S.C. § 3661( "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in *Booker* 125 S.Ct. at 758).

A defendant's physical condition has long been recognized as a ground to depart downward and it is an equally valid consideration in granting mitigation. U.S.S.G. §5H1.4 makes "physical appearance including physique" not "ordinarily" relevant, but may be so in unusual cases. 5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence below the guideline range; e.g., in the case of a seriously infirm defendant, *home*

*detention may be as efficient as, and less costly than, imprisonment."* U.S. v. Martin, 363 F.3d 25, 50 (1 Cir. 2004).

The First Circuit has long recognized the validity of a departure for physical condition. See, *U.S. v. Martin, supra* (in tax fraud case, three level downward departure proper (and possibly more on remand) where "several serious medical conditions make [defendant]'s health exceptionally fragile [and] ...we are not convinced that the BOP can adequately provide for Martin's medical needs during an extended prison term [and] [t]here [was] a high probability that lengthy incarceration will shorten [defendant]'s life span); *United States v. Rivera*, 994 F.2d 942, 948 (1 Cir. 1993) (listing several factors, including physical impairment, that are discouraged bases for departure; "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range" citing U.S.S.G. § 5H1.4); see also *United States v. Woodward*, 277 F.3d 87, 92-93 (1 Cir. 2002) (recognizing the authority of the district court to depart in the case of an extraordinary physical impairment).

The First Circuit has not been alone in accepting the validity of this departure. *See, U.S. v. Gee*, 226 F.3d 885 (7 Cir. 2000) (downward departure under §5H1.4 based on health not abuse of discretion where judge reviewed 500 pages of medical records and concluded that "imprisonment posed a substantial risk to [defendant's] life,"; BOP letter stating that it could take care of any medical problem "was merely a form letter trumpeting capability"); *U.S. v. Johnson*, 71 F.3d 539, 545 (6 Cir. 1995) (under U.S.S.G. §5H1.4, although "rare,"

6

downward departure possible for physician convicted of distribution of drugs and mail fraud based on his medical condition where defendant was a 65-year-old man who suffered from diabetes, hypertension, hypothyroidism, ulcers, potassium loss, and reactive depression, but specific findings required); *U.S. v. Streat*, 22 F.3d 109, 112-13 (6 Cir. 1994) (remanded to district court observing that court has discretion to depart because of defendant's "extraordinary physical impairment"); *U.S. v. Long*, 977 F.2d 1264, 1277-78 (8 Cir. 1992) (defendant's extreme vulnerability to victimization in prison justifies downward departure where four doctors concurred); *U.S. v. Greenwood*, 928 F.2d 645 (4 Cir. 1991) (where defendant was felon who possessed firearm, departure to probation proper where defendant had severe medical impairment caused by loss of both his legs below his knee due to action in the Korean war ); *U.S. v. Lara*, 905 F.2d 599, 605 (2 Cir. 1990) (same); *U.S. v. Gonzalez*, 945 F.2d 525 (2 Cir. 1991) (feminine cast and softness of features justified downward departure because he will be victimized in prison); *U.S. v. Slater*, 971 F.2d 626, 635 (10 Cir. 1992) (mental retardation, scoliosis of spine and chronic pain may warrant departure under §5H1.4); *U.S. v. Greenwood*, 928 F.2d 645, 646 (4 Cir. 1991) (loss of both legs in war, which required ongoing treatment that would be jeopardized by incarceration, justified downward departure to probation); *but see U.S. v. Martinez-Guerrero*, 987 F.2d 618, 620-21 (9 Cir. 1993) (departure properly denied for legally blind defendant because prison could accommodate him).

Physical condition has been a ground for departure in this District. See, *U.S. v. Pineyro*, 372 F.Supp.2d 133 (D. Mass. 2005) (defendant convicted of felon in possession with guidelines 46-57 months granted departure to time served (15 months) in part because of extraordinary physical condition where BOP failed to show that it could provide defendant with needed medical care regular surgical interventions); *U.S. v. Willis*, 322 F. Supp. 2d 76, (D. Mass. 2004) (in tax evasion case downward departure granted to 69 year old from 27 months to probation with six months home confinement based upon inordinate number of potentially serious medical conditions, and was at age where such conditions would have invariably gotten worse in prison—in response to government's argument that BOP could care for defendant, court said "I have never had a case before me in which the Bureau of Prisons suggested that it did not have the capacity to care for a defendant"); *U.S. v. Lacy*, 99 F.Supp.2d 108 (D. Mass. 2000) (three-level downward departure warranted in drug case where D has bullet in his brain causing lost partial hearing in his left ear, has blood clots in his arteries, and experiences seizures); *U.S. v. Patriarca*, 912 F.Supp. 596, 629 (D. Mass. 1995) (same); *See, US v. Ribot*, 97 F.Supp.2d 74, 84 (D. Mass. 1999)(downward departure of seven levels justified to preserve treatment plan); *U.S. v. Baron,* 914 F.Supp. 660, 662-665 (D. Mass. 1995) (bankruptcy fraud, downward departure from range of 27-33 months to probation and home detention to a 76-year old defendant with medical problems which could be made worse by incarceration).

B.      Vulnerability To Victimization Or Abuse In Prison

Ms. Senatore's condition makes her vulnerable to abuse in prison. There is little reason to believe that the pattern of peer abuse in her childhood will not repeat itself in the Bureau of prisons. Vulnerability is a prototypical grounds for mitigation or departure. See, *Koon v. U.S.*, 518 U.S. 81 (1996) (no abuse of discretion to grant downward departure to police officers convicted of civil rights violation of Rodney King because of vulnerability in prison). There have been a variety of reasons to acknowledge a defendant's vulnerability. See, e.g., *U.S. v. Parish*, 308 F.3d 1025 (9 Cir. 2002) (eight level departure in child pornography case in part because defendant would have "high susceptibility to abuse in prison" because of "his demeanor, his naiveté, and the nature of the offense" where psychiatrist testified defendant was in "for a hard time" in prison); *U.S. v. Graham*, 83 F.3d 1466, 1481 (D.C. Cir. 1996) (extreme vulnerability to abuse in prison grounds for departure; case remanded to consider such); *U.S. v. Long*, 977 F.2d 1264, 1277-78 (8 Cir. 1992) (affirming downward departure from 46 months to one-year home detention because doctors wrote defendant subject to victimization and potentially fatal injuries in prison); *U.S. v. Lara*, 905 F.2d 599, 605 (2 Cir. 1990) (downward departure from 10 to 5 years upheld - youthful appearance and bisexuality make him "particularly vulnerable to prison victimization" a factor "not adequately considered by guidelines").

C.  Detention Circumstances

The PSR's statement of federal detention (PSR ¶ 2) is technically accurate, but requires comment because of 32 days' dead time created when Ms. Senatore was held on a BMC warrant. Ms. Senatore's detention in state custody is related to the instant offenses of conviction because she was initially charged for the offense conduct in Boston Municipal Court. There she was found FTA even though her non-appearance was later excused because she was in-patient at MGH for surgery. The charges in BMC (same as the conduct of conviction) led Virginia probation to issue a warrant for revocation. After hearing on March 29, 2005, defendant was released into the Virginia warrants. In Boston Municipal Court, she was detained for about seven weeks of that time to answer the BMC warrant and to answer an open warrant in Woburn (later found to be expired and therefore dismissed). Virginia held Ms. Senatore and sentenced her to 45 days served, so an additional 32 days between March 29 and June 6 remains unaccounted for. Since Ms. Senatore spent this time in Massachusetts or Virginia custody, but not in federal custody, counsel does not believe the Bureau of Prisons will credit her.

This Circuit has acknowledged the validity of departures for delay in the proceedings that prejudice a defendant. *U.S. v. Saldana,* 109 F.3d 100, 104 (1 Cir.1997) (departure appropriate for pre-indictment delay, even if unintentional, if it produces an unfair or unusual sentencing result).

D.  Restitution Issues Interest on fines and restitution.

The Court should waive interest on fines and restitution. PSR ¶¶ (117) - (119). Ms. Senatore does not have the ability to pay restitution or fines. Her medical condition will not allow her an income in the foreseeable future. Even if her health were to improve, her employment history at age 50 suggests she is not capable of supporting herself.

Ms. Senatore should be ordered only to make nominal restitution payments. 18 USC §§3663 & 3663A make the imposition of restitution mandatory. While §3663 provides that the Court: "*may* order,…that the defendant make restitution to any victim …", §3663A says that the court "*shall*" order restitution. Where restitution must be ordered but the defendant has no ability to pay, a nominal order should enter. 18 USC §3664(f)(3)(B) provides as follows:

> (B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

CONCLUSION

For the reasons set forth above, this Court should mitigate defendant's Guidelines sentence leaving all but one month of her credit for time served to be offset against her mandatory sentence.

Dated this 22nd day of November, 2005 at Boston, Massachusetts.

/s/ *Kevin L. Barron*
Kevin Lawrence Barron BBO No. 550712
Attorney for Marianne Senatore
453 Washington Street - 5th Fl.
Boston, MA 02111-1325
Telephone No. 617-482-6368
Cellular No. 617-407-6837
E-mail: k@lawyerbarron.com

ELECTRONIC FILING